**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00206-MEH

OTTER PRODUCTS, LLC,
TREEFROG DEVELOPMENTS, INC.,

    Plaintiffs,

  v.

PHONE REHAB, LLC,
MOSHE ATON,
ALEX DEEB, and
JOHN DOES 1-10

    Defendants.

---

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

---

Pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendants Phone Rehab, LLC ("Phone Rehab"), Messrs. Moshe Aton and Alex Deeb

(collectively and individually, "Defendants") hereby move to dismiss the Complaint (Dkt. 1)

filed by Plaintiffs Otter Products, LLC ("Otter") and TreeFrog Developments, Inc. ("TreeFrog")

(collectively and individually, "Plaintiffs"), and state as follows.

## I. INTRODUCTION

The above-captioned action involves the sale of phone cases via "online marketplaces"

accessed via the Internet. Compl., Dkt. 1, ¶¶ 26-48. Plaintiffs manufacture and sell these cases

under the OtterBox and LifeProof brands. *Id.*, ¶ 14. As outlined below, Defendant Phone Rehab[1]

purchases genuine OtterBox and LifeProof products on the open market and sells these products

through an Amazon storefront, which is not actionable under the Lanham Act or otherwise.

Plaintiffs filed the instant Complaint in the District of Colorado, their home district,

alleging various Lanham Act and state law claims. However, this Court lacks personal

jurisdictional over the Defendants and, in all events, Plaintiffs' Complaint fails to state a claim

upon which relief could be granted. With respect to personal jurisdiction, Plaintiffs cannot show

that Defendants have "substantial contacts" with the State of Colorado such that they could

reasonably expect to be haled into court there. Instead, Plaintiffs merely allege that Defendants

are subject to personal jurisdiction in Colorado due to the existence of an "interactive" Amazon

storefront. Compl., ¶ 12. Most of Plaintiffs' jurisdictional allegations are made "upon

information and belief" further demonstrating the tenuous nature of their claims against

Defendants in the State of Colorado. *Id.*, ¶¶ 3-6, 47-48, 95, 123, 128-133. But more importantly,

Defendants have no presence in Colorado, no employees in Colorado, no offices or other

property in Colorado, do not hold inventory in Colorado (temporarily or otherwise), and have not

purposefully directed any activities towards Colorado. As such, the Complaint should be

dismissed for lack of personal jurisdiction.

Turning to the substance of the Complaint, it is well-established under the "first sale

doctrine," that the resale of genuine trademarked goods—as in this case—does not constitute

trademark infringement, even if made without the trademark owner's consent. *Davidoff & Cie,*

---

[1] Defendants Aton and Deeb are the principals of Phone Rehab.

*S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301–02 (11th Cir. 2001). In hopes of avoiding the first sale doctrine, the Complaint invokes (1) the quality control test, and (2) the material difference exception. Plaintiffs' attempted application of the "quality control test" suffers from two fatal flaws: first, no court in this District has recognized this exception, let alone determined the breadth of application sought by Plaintiffs here; and second, the few courts that have recognized this test requires a plaintiff to "specifically allege an actual disruption in quality control procedures and how such disruption has or would be likely to damage the product itself and thus impact the value of the mark." *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 490– 91 (S.D.N.Y. 2012). Plaintiffs do not (and cannot) allege ***any facts*** that would meet these requirements. Whether supplied by Plaintiffs, Defendants, or another party, the phone cases in question are indistinguishable from a customer's perspective because they were all manufactured and packaged by Plaintiffs, and first sold by Plaintiffs or one of Plaintiffs' Authorized Resellers. *Id.*, ¶¶ 54-84.

Plaintiffs also allege that the Otterbox and LifeProof products supplied to Amazon are "materially different" than those sold by Plaintiffs and their Authorized Resellers because they do not come with a warranty. *Id.*, ¶¶ 90–92, 150. But Plaintiffs provide no facts in support of these statements, e.g., (1) the specific warranty terms, or (2) the particular "disclaimer" language that would exclude the products-at-issue from warranty coverage. For these reasons, Plaintiffs' federal trademark infringement claim (Count I) fails. Plaintiffs' false advertising, unfair competition, trademark dilution and related state law claims (Counts II–VI) fail for the same reason, as merely reselling genuine products, absent more, is not a violation of any law. *See, e.g.*, *Davidoff*, 263 F.3d at 1301 ("consumers are not confused as to the origin of the goods: the origin

has not changed as a result of the resale"). The Complaint also claims tortious interference with business relations (Count VII). However, the Complaint fails to identify a single, specific business relationship Defendants have allegedly interfered with, and any claim for tortious interference is foreclosed by "the competitor's privilege" and should therefore be dismissed.

## II.   BACKGROUND

Plaintiffs manufacture and sell "mobile device, smartphone, and tablet cases and accessories" and market these products under the OtterBox and LifeProof brands ("OtterBox and LifeProof products"). Compl., ¶ 14. Plaintiffs allege[2] that they distribute the OtterBox and LifeProof products "exclusively through a network of authorized resellers." *Id.* The crux of Plaintiffs' Complaint is that Defendants are reselling OtterBox and LifeProof products without being subject to Plaintiffs' authorized reseller network. *See, e.g.*, Compl., ¶¶ 96–97. In this regard, Plaintiffs concede that the products sold by Phone Rehab are genuine. *Id.*, ¶¶ 68, 90, 96-98, 100-102, 136 and 150.

In the Complaint, Plaintiffs allege that Phone Rehab operates a storefront on Amazon under the name "Amazing Gadgets SFL." *Id.*, ¶ 3. The Amazing Gadgets SFL online storefront offers, among other things, a wide variety of consumer products, including genuine OtterBox and LifeProof products. Phone Rehab[3] purchases the OtterBox and LifeProof products on the open market from wholesalers and distributors, ***i.e., they are genuine products***. *Id.*, ¶¶ 26-30, 32. The Complaint only offers conclusory allegations regarding personal jurisdiction over Defendants. *Id.*,

---

[2] On January 24, 2019, Plaintiffs filed suit against Defendants. Dkt. 1. The seven-count Complaint attempts to allege causes of action against the Defendants for trademark infringement and unfair competition under federal and state law, as well as tortious interference with business.
[3] Moshe Aton and Alex Deeb are merely the principals of Phone Rehab. *See* Declaration of Moshe Aton ("Aton Decl."), ¶ 2; Declaration of Axel Deeb ("Deeb Decl."), ¶ 2.

¶¶ 9–12, 164. But Defendants do not have any contacts with Colorado. Phone Rehab is a Florida corporation with its only place of business in Florida, and does not have any employees, office locations, bank accounts, assets, or other presence in Colorado. Aton Decl., ¶¶ 2-5; Deeb Decl., ¶¶ 2-5. Moshe Aton and Alex Deeb likewise have no ties to Colorado, do not work or employ others to work in Colorado, have no distribution facilities in Colorado and do not perform any services for Phone Rehab in Colorado. Aton Decl., ¶¶ 3-5; Deeb Decl., ¶¶ 3-5. Because Plaintiffs have failed to establish proper jurisdiction, or state a claim on which relief can be granted, the Complaint should be dismissed.

## III.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation and citation omitted). "[W]hen legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions . . . .'" *Id.* at 1190 (quoting *Iqbal*, 556 U.S. at 678). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.*

IV.    **ARGUMENT**

A.    **The Court Does Not Have Personal Jurisdiction over Defendants**

As a preliminary matter, Plaintiffs' Complaint should be dismissed because Defendants are not subject to personal jurisdiction in Colorado. As the Supreme Court recently clarified, the primary focus of a personal jurisdiction analysis is "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). There are two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. *Id.* General jurisdiction only exists where a defendant can fairly be considered at home, for example, its domicile (for individuals) or place of incorporation or principal place of business (corporations). *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). And, for specific jurisdiction to exist, "'the *suit*' must 'arise out of or relate to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (emphasis in original) (internal quotations and modifications omitted).

Plaintiffs bear the burden of establishing personal jurisdiction. *See, e.g.*, *Spyderco, Inc. v. Kevin, Inc.*, No. 16-cv-03061-CMA-NYW, 2017 U.S. Dist. LEXIS 105614, at *4 (D. Colo. Jul. 7, 2017). A party cannot rely on unsupported allegations in a complaint to establish minimum contacts; rather, it must show specific facts admissible into evidence. *See, e.g., id.* ("Plaintiff has 'the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading.'") (quoting *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)). Plaintiffs must also show that the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). In

order to satisfy constitutional due process requirements, Plaintiffs must prove that Defendants' affiliations with Colorado are so continuous and systematic as to render them essentially at home in Colorado (general jurisdiction) or prove the cause of action arises out of or relates to Defendants' substantial contacts with Colorado (specific jurisdiction). *Daimler*, 571 U.S. at 139.

### 1.   Plaintiffs Have Not Established General Jurisdiction

General jurisdiction is inapplicable here because none of the Defendants can be considered "at home" in Colorado. *Id.* at 139, n.19. Defendant Phone Rehab is a Florida corporation with its principal place of business in Boca Raton, Florida. Compl., ¶¶ 3-5; Deeb Decl., ¶¶ 3-5. The individual Defendants Moshe Aton and Alex Deeb are residents of Delray Beach and Boca Raton, Florida, respectively. Aton Decl., ¶ 4; Deeb Decl., ¶ 4. The Defendants simply have no contacts with, nor do they maintain a relationship of permanent and continuous presence in Colorado. Aton Decl., ¶¶ 2-5; Deeb Decl., ¶¶ 2-5.   Thus, assertion of general jurisdiction over the Defendants would clearly violate due process. *See, e.g.*, *BASF Corp. v. Willowood, LLC*, No. 18-cv-00268-CMA-STV, 2019 U.S. Dist. LEXIS 6377, at *14 (D. Colo. Jan. 14, 2019) (defendant "is in no sense at home in Colorado" where it "is not incorporated in," "have its principal place of business in," or "have any 'employees, office locations, bank accounts, or assets'" in Colorado).

### 2.   Plaintiffs Have Not Established That Specific Personal Jurisdiction Applies

"Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic*, 877 F.3d at 904. Under the first step—the minimum

contacts test—Plaintiffs must establish two distinct requirements: "(i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Id.*

Here, Plaintiffs only allege that Defendants have purposefully directed activities at Colorado by operating an "interactive" Amazon storefront. Compl., ¶¶ 9–12, 94-97 and 150-161. However, courts in the Tenth Circuit have concluded that mere operation of an Amazon storefront is not sufficient to establish jurisdiction.  For example, in *Vitamins Online v. Dynamic Industries*, the court explained that:

> If Plaintiff's argument were to be accepted, anyone who sold a product over the internet would be subject to jurisdiction anywhere that product may have been advertised or purchased. Such a result would essentially eliminate the concept of personal jurisdiction. . . . "[B]eyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way ***target the forum state's market***."

No. 2:13-CV-665 TS, 2014 U.S. Dist. LEXIS 17258, at *7–8 (D. Utah Feb. 10, 2014).[4] The *Vitamins Online* Court went on to reject a finding of jurisdiction because, among other things, "there [was] no evidence that Defendants directed advertising or sales solicitations at [the forum state's] residents and nothing on amazon.com specifically targets [those] residents." *Id.* at *8.

Here, Plaintiffs cannot meet their burden to show that Defendants purposefully directed their activities towards Colorado or its residents. For example, just like in *Vitamins Online*, Defendants do not direct advertising to Colorado residents, by geographically-focused online marketing or otherwise. That the "Amazing Gadgets SFL" Amazon storefront can be accessed by anyone with access to the Internet, including Colorado residents, does not mean that Defendants

---

[4] All emphasis added unless otherwise indicated.

aimed or directed activities towards Colorado residents. *Davidoff*, 263 F.3d at 1301–02*; Vitamins Online*, 2014 U.S. Dist. LEXIS 17258, at *7–8.

Plaintiffs appear to contend that personal jurisdiction is established because Defendants operate an Amazon storefront with "knowledge that Plaintiffs are located in Colorado and will be harmed by Defendants' actions in Colorado." Compl., ¶ 9. But "[a]llegations that Defendants intentionally infringed Plaintiff's intellectual property with the knowledge of the effect on Colorado residents is not a sufficient basis for personal jurisdiction." *Spyderco, Inc. v. Mambate USA Inc.*, No. 15-cv-00943-REB-KLM, 2016 U.S. Dist. LEXIS 33323, at *10 (D. Colo. Feb. 8, 2016); *see also, e.g.*, *Job Store, Inc. v. Job Store of Loveland, Oh., LLC*, No. 15-cv-02228-PAB-KLM, 2016 U.S. Dist. LEXIS 192657, at *15 (D. Colo. Sept. 7, 2016) (the Supreme Court's decision in "*Walden* establishes that a defendant's knowledge that harm will be suffered to a plaintiff in the forum state, standing alone, does not constitute sufficient minimum contacts to exercise personal jurisdiction over a defendant") (citing *Walden v. Fiore*, 571 U.S. 277 (2014)).

Rather, in a case alleging trademark infringement, "as in any other case, the jurisdictional inquiry hinges on whether defendant 'purposefully exploited the [Colorado] market' or otherwise targeted the state." *Job Store*, 2016 U.S. Dist. LEXIS 192657, at *15–16. Here, Plaintiffs cannot establish that Defendants purposefully targeted Colorado or that Plaintiffs' claims arise out of any activity purposefully directed at Colorado. Again, Phone Rehab does not have any employees, agents, or representatives in Colorado and Phone Rehab has never maintained offices, warehouses, or any other type of property in Colorado. Aton Decl., ¶¶ 2-5. Furthermore, the products sold by Phone Rehab are handled by persons residing exclusively in the State of Florida (*id*.), and any sales made through the "Amazing Gadgets SFL" storefront are "Fulfilled by

Amazon," meaning that Amazon "store[s] [its] products in Amazon's fulfillment centers, and [Amazon] pick[s], pack[s], ship[s], and provide[s] customer service for these products." *Fulfillment by Amazon*, Amazon.com, https://services.amazon.com/fulfillment-by-amazon/benefits.html (last visited Mar. 15, 2019). Given that Phone Rehab has not purposefully directed its activities at the State of Colorado, the remaining prongs of the specific jurisdiction test are inapplicable, and the Court lacks specific jurisdiction over Defendants.

Moreover, even if Plaintiffs were able to meet the "minimum contacts" test for specific jurisdiction (which they cannot), the Court must still "inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Old Republic*, 877 F.3d at 908 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011)). Here, an exercise of jurisdiction based solely on the allegation that Phone Rehab operates an Amazon storefront would "render jurisdiction unreasonable." *Old Republic*, 877 F.3d at 909 (internal quotations omitted). A determination of whether jurisdiction is reasonable is judged by considering the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Id.* (internal quotations omitted). Here, the burden on Defendants in defending themselves in a jurisdiction across the country is significant. In contrast, Plaintiffs are readily equipped to bring this dispute in a jurisdiction where Defendants actually do have significant contacts, e.g., Florida, as this action is just one of many litigations that Plaintiffs have brought across the country on similar issues. In the past year alone, Plaintiffs have brought similar actions against at least 14

other defendants in various jurisdictions across the country, including New York and Illinois. Presumably, the only reason that Plaintiffs filed suit in Colorado was to create hardship for the Defendants.

Whatever the reason, the mere operation of an Amazon storefront is insufficient to create jurisdiction as the Defendants have not aimed or directed any activities towards Colorado or its residents. For these reasons, the Complaint should be dismissed in its entirety for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

### B. The Complaint Fails to State a Claim for Trademark Infringement Under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)

Count I of the Complaint purports to state a claim for trademark infringement under Sections 1114 and 1125(a)(1)(a) of the Lanham Act. In truth, this case has nothing to do with trademark law, as reselling genuine products made and first sold by Plaintiffs (or their authorized resellers) bearing Plaintiffs' trademarks can never be trademark infringement, given the first sale doctrine. Plaintiffs are simply unhappy with Defendants' sale of *genuine* products in a sales channel that Plaintiffs seek to control, namely, Amazon. In particular, Plaintiffs want to eliminate competition and, in turn, maintain pricing on this critical and rapidly growing channel.

The problem for Plaintiffs is black letter law states "the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1023 (2d Cir. 1989); *Davidoff*, 263 F.3d at 1301. This is because consumers of resold genuine goods are not confused as to the origin of the goods, i.e., the origin of the goods does not change as a result of the resale. *Id.* Under the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham Act are exhausted after the trademark owner's first sale of its product. *Id.* (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d

298, 301 n.4 (3d Cir. 1998)). Although Plaintiffs attempt to dodge the implications of the first

sale doctrine by invoking the "quality control" and "material difference" exceptions, Plaintiffs

would have the court expand these exceptions far beyond their allowable limits.

### 1.     Scope of the "Quality Control" Exception

The Complaint first attempts to invoke the Second Circuit's "quality control" exception

to the first sale doctrine. In this regard, Plaintiffs allege that they impose certain "quality control"

requirements on their Authorized Resellers. For example, Plaintiffs allege that their Authorized

Resellers must "provide certain services to their customers" and "familiarize themselves with the

features of all Otter Products kept in their inventory." Compl., ¶ 64. Plaintiffs also allege that

"Authorized Resellers inspect all Otter Products for damages, defects, evidence of tampering,

and other non-conformance and remove all such products from inventory." *Id.*, ¶ 60. The

Complaint concludes that, because Defendants allegedly do not abide by these policies, "the

products Defendants sell are materially different from genuine Otter Products." *Id.*, ¶ 141.

As an initial matter, it does not appear that this exception to the first sale doctrine—first

developed by the Second Circuit—has been explicitly adopted by the Tenth Circuit.

Notwithstanding, the Second Circuit's quality control exception is inapplicable to the mere resale

of genuine goods in unauthorized channels. Courts have only recognized the quality control

argument in trademark infringement cases where there is "some defect (or potential defect) in *the

product itself* that the customer would not be readily able to detect." *Matrix Essentials, Inc. v.

Emporium Drug Mart, Inc.*, 988 F.2d 587, 591 (5th Cir. 1993) (emphasis in original); *El Greco

Leather Products Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986) (goods

manufactured by licensee not genuine where goods not inspected pursuant to trademark holder's

quality control standards).

As the Complaint admits, the products at issue here were all manufactured, packaged and sold into the stream of commerce *by Plaintiffs themselves*. Compl., ¶¶ 68, 90, 96-98, 100-102, 136 and 150. Thus, the quality control test is inapplicable. *See Technomarine*, 905 F. Supp. 2d at 490–91 ("cases in which the quality control test has supported a non-genuineness claim routinely and more specifically allege an actual disruption in quality control procedures and *how such disruption has or would be likely to damage the product itself and thus impact the value of the mark*"). Moreover, Plaintiffs' allegations relating to its purported quality control requirements are contradictory. The Complaint alleges issues caused by online merchants, but acknowledges that it allows certain, unidentified parties to sell OtterBox and LifeProof products on Amazon. Compl., ¶ 82. The Complaint also asserts that "Defendants sell products on their Amazon storefront anonymously and do not provide customers information about their business or how to contact them." *Id.*, ¶ 100. But Plaintiffs' Authorized Resellers are equally anonymous to consumers. Thus, Plaintiffs' purported quality control requirements are, at best, "pretextual" and cannot support a claim of trademark infringement. *See Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996) (to establish a claim for trademark infringement based on failure to follow quality control standards, the trademark owner must demonstrate "that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark."); *Technomarine*, 905 F. Supp. 2d at 490 (dismissing complaint where "Plaintiff has not alleged facts to suggest that it has established 'substantial' post-sale quality control procedures, or that non-conforming sales diminish the value of its mark").

### 2.      Plaintiffs "Warranty" Allegations Are Unsupported

Courts have also found that the first sale doctrine does not apply "when an alleged infringer sells trademarked goods that are ***materially different*** than those sold by the trademark owner." *Davidoff*, 263 F.3d at 1302. In this regard, the Complaint alleges that the products sold by Defendants are "materially different" because they "do not come with the Otterbox Warranty." Compl., ¶ 182. But Plaintiffs provide insufficient facts relating to this alleged warranty. Notably absent from the Complaint are the specific terms of the warranties that allegedly apply to each of the products-at-issue. Nor does the Complaint provide the specific language that purportedly excludes the products sold by Defendants. Instead, the Complaint offers conclusory statements to the effect that "[c]onsumers would find it material and relevant to their purchasing decision to know whether an OtterBox Product they were considering buying was covered by the OtterBox Warranty." *Id.*, ¶ 92.

Such allegations are insufficient to avoid dismissal. *See Huf Worldwide, LLC v. Wal-Mart Stores, Inc.*, No. 16cv751-LAB (WVG), 2017 U.S. Dist. LEXIS 28297, at *4 (S.D. Cal. Feb. 28, 2017). In *Huf*, the plaintiff alleged that the defendant was violating the Lanham Act by reselling shoes bearing the plaintiff's trademark. *Id.* at *2–3. Like Plaintiffs here, the plaintiff in *Huf* alleged that: (1) "it offers warranties on its products, but only for those 'that are sold through authorized dealers'"; and (2) because the defendant "isn't an authorized dealer . . . [defendant's] sales void the Huf warranty." *Id.* at *4. The court found these allegations insufficient, noting that the plaintiff "hasn't even offered the Court the specific language of its warranty…[or] a sufficient statement of how the void warranty is likely to cause confusion or why consumers consider the warranty a relevant difference." *Id.*

Even if Plaintiffs attempted to remedy these deficiencies, the absence of a warranty has only been recognized as a possible "material difference" in cases involving high-end products, where factory service and repair were of concern. *See, e.g.*, *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1076 (10th Cir. 2009) (allegations that consumers rely on plaintiff's product and service assistance warranty in making their decisions to purchase plaintiff's high-end radar detectors); *Fender Musical Instruments Corp. v. Unlimited Music Ctr., Inc.*, No. 3:93CV2449 (AVC), 1995 U.S. Dist. LEXIS 15746, at *10 (D. Conn. Feb. 16, 1995) (gray market guitars imported from Japan lacked Fender's warranty). It is entirely unclear from the Complaint why Plaintiffs' unidentified warranty is important to consumers, or why the warranty offered by Defendants is inadequate.

At the end of the day, Plaintiffs are trying to avoid precisely what the first sale doctrine is designed to preserve: "an area for competition by limiting the producer's power to control the resale of its product." *Sebastian Int'l, Inc. v. Long Drug Stores Corp.*, 53 F.3d 1073, 1075 (9th Cir. 1995). Defendants have engaged in fair competition by reselling products lawfully obtained, which have been subject to a "first sale." "When a purchaser resells a trademarked article under the producer's trademark, and nothing more, there is no actionable misrepresentation under the statute." *Id.* at 1076.  Count I of the Complaint should be dismissed.

### C.    The Complaint Fails to State a Claim for False Advertising or Unfair Competition Under 15 U.S.C. § 1125(a)

Counts II and III of the Complaint attempt to allege false advertising and unfair competition under Section 1125(a) of the Lanham Act. These claims are based on the same insufficient set of facts discussed above, namely, Defendants' mere resale of genuine products without Plaintiffs authorization. *See, e.g.*, Compl., ¶¶ 210–253. They fail for the same reasons.

"To prevail on a false designation of origin claim under 15 U.S.C. § 1125(a), a plaintiff must establish that the defendant adopted a mark confusingly similar to the plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503 (11th Cir. 1985). The first sale doctrine applies with equal force to unfair competition and false designation of origin claims. "This is for the simple reason that consumers ***are not confused as to the origin of the goods***: the origin has not changed as a result of the resale." *Davidoff*, 263 F.3d at 1301; *NEC Elecs. v. Cal Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987) ("[T]rademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold."). As such, Counts II and III of the Complaint should also be dismissed. *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1356 (S.D. Fla. 2012) (dismissing unfair competition and false designation claims where defendants "were merely reselling Plaintiff's *genuine* products") (emphasis in original).

### D.      The Complaint Fails to State a Claim for Dilution Under 15 U.S.C. § 1125(c)

Count IV of the Complaint alleges that Defendants' use of the OtterBox and LifeProof marks has resulted in dilution and is actionable under Section 1125(c) of the Lanham Act. Compl., ¶¶ 254-279. To establish a dilution claim, a plaintiff must provide sufficient evidence that:

> (1) it owns a famous mark that is distinctive; (2) the defendant is using a mark in commerce that allegedly dilutes the plaintiff's famous mark; (3) the defendant's use of its mark began after the plaintiff's mark became famous; and (4) the defendant's use of its mark is likely to cause dilution by blurring or by tarnishment.

*Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012). The Lanham

Act defines "dilution by tarnishment" as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(B)–(C). With respect to the first element—fame—the Complaint offers only conclusory statements, including:

> [1] "The OtterBox name, brand, and image is well-recognized by consumers throughout the United States for Otter's mobile device cases and accessories, and outdoor products." Compl., ¶ 262;

> [2] "Consumers recognize and associate the OtterBox name with quality." *Id.*, ¶ 263; and

> [3] "Because of the quality, durability, and dependability of OtterBox Products and Otter's use of the OTTERBOX® trademark, consumers trust the OtterBox name and OtterBox Products." *Id.*, ¶ 262.

These boilerplate allegations are insufficient to plausibly establish a mark as famous, or to sustain a claim for dilution. *Brain Pharma*, 858 F. Supp. 2d at 1357 ("Plaintiff's mere allegation that the BPI mark is famous is insufficient to state a trademark dilution claim."). Moreover, dilution by tarnishment—as alleged here—only "occurs when a trademark is linked to products of ***shoddy quality***, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004) (internal quotations omitted). Here, Plaintiffs merely incorporate generic reviews of their products that aren't even sold by Defendants. Deeb Decl., ¶ 7. And with respect to the reviews that have been made for products sold by Defendants (*see* Compl., ¶¶ 107-121), eleven of those reviews are for products that aren't at issue in this case (e.g., they are reviews for products made by someone other than Plaintiffs). Deeb Decl., ¶ 8. Of the remaining four reviews, three of those do not evidence tarnishment, and are instead positive reviews. *Id.*

Notwithstanding the foregoing, any claim of tarnishment must also fail since Defendants are merely reselling authentic products. *See Brain Pharma*, 858 F. Supp. 2d at 1358 (dismissing dilution claim and noting that "if Plaintiff's dilution claim is premised solely on Defendants' resale of BPI products at discounted prices, the Court doubts whether Plaintiff can ever state a trademark dilution claim."). Count IV should be dismissed as well.

### E.      The State-Law Claims Fail for the Same Reasons as the Lanham Act Claims

Counts V and VI are two state law claims that Plaintiffs assert based on the same set of insufficient allegations as their Lanham Act claims. Specifically, Plaintiffs attempt to allege common law trademark infringement (Count V) and violation of the Colorado Consumer Protection Act, Col. Rev. Stat. § 6-1-101 et seq. ("CCPA") (Count VI) based on Defendants' resale of goods in channels unauthorized by Plaintiffs.

Because none of Plaintiffs' federal law claims states a claim on which relief can be granted, it follows that none of Plaintiffs state-law claims states a claim on which relief can be granted either. *See Natural Answers, Inc. v. Smithkline Beecham Corp.*, 529 F.3d 1325, 1332–33 (11th Cir. 2008) ("Since [the plaintiff] is unable to bring an unfair competition claim under the Lanham Act under the theory of either false advertising or trademark infringement, it follows that the common law claims based on unfair competition must fail as well.").

### F.      The Tortious Interference Claim Is Conclusory and Should Be Dismissed

Count VII of the Complaint attempts to allege tortious interference with contract and business relations. In order to plead such a claim, Plaintiffs would have needed to allege facts in support of the following elements:

> (1) the existence of a valid contract or reasonable prospect of having a business relationship; (2) that the defendant knew of the contract or prospective

relationship; (3) the defendant intended to induce a breach of the contract or interfere with the prospective business relationship; (4) defendants engaged in conduct which produced a breach of contract or prevented the plaintiff from acquiring or continuing a prospective business relationship; (5) the interference was improper; and (6) the plaintiff suffered damages.

*Zimmer Spine, Inc. v. EBI, LLC*, No. 10-cv-03112-LTB-CBS, 2011 U.S. Dist. LEXIS 103629, at

*6–7 (D. Colo. Sep. 14, 2011). The Complaint, however, provides only conclusory allegations in

connection with the elements above. Notably, the Complaint fails to identify any specific

contract or business relationship in which Defendants' have allegedly interfered. Indeed, this

cause of action hinges upon pure speculation—that Defendants acquired OtterBox and LifeProof

products from unidentified "Authorized Resellers." Compl., ¶ 160. Tellingly, Plaintiffs do not

even identify one.

Plaintiffs' allegations relating the "intent" element are particularly deficient. *See Sherman*

*Agency v. Carey*, 39 Colo. App. 246, 250 (Colo. App. 1977) ("Tortious interference requires as

one of its elements an intent by the defendant to induce breach of the contractual relationship."),

*aff'd*, 195 Colo. 277 (1978); *see also* Restatement (Second) of Torts § 766 cmt. j (requiring, as a

predicate for liability, that "the actor acts for the ***primary purpose*** of interfering with the

performance of the contract"). Just like any other merchant, Defendants buy and sell phone cases

on the open market for the "primary purpose" of earning a profit.

Any claim for tortious interference is similarly foreclosed by the "the competitor's

privilege." *See Zimmer Spine*, 2011 U.S. Dist. LEXIS 103629, at *21. Specifically, the

competitor's privilege provides that a defendant does not engage in improper conduct, so as to be

liable for intentional interference, if: "(1) it concerns a matter of competition between the

defendant and plaintiff; (2) the defendant does not employ wrongful means; (3) the action does

not amount to an unlawful restraint of trade; and (4) the defendant's purpose is, at least in part, to advance its own interest." *Nobody in Particular Presents, Inc. v. Clear Channel Commc'n,, Inc.*, 311 F. Supp. 2d 1048, 1115 (D. Colo. 2004) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 501 (Colo. 1995); Restatement (Second) of Torts § 768).

With respect to the first element, the Complaint alleges that the parties are direct competitors, i.e., they both sell OtterBox and LifeProof products online. (*See* Compl. ¶ 14 (Plaintiffs "distribut[e] Otter Products exclusively through their own website…"); *see also id.*, ¶¶ 218–39 (alleging "unfair *competition*").) The Complaint does not allege any "wrongful means" (element 2) and the Complaint confirms that the remaining elements are met in this case. If anything, it is Plaintiffs that seek to restrict trade. Following Plaintiffs' logic, *anyone* that purchases OtterBox or LifeProof products—whether online, in a retail store, through a wholesaler, at auction, etc.—would be unable to resell that product without committing tortious interference.

For all of these additional reasons, Count VII of the Complaint should be dismissed. *Zimmer Spine*, 2011 U.S. Dist. LEXIS 103629, at *21 (dismissing complaint that "fails to set forth allegations of 'wrongful means' to support a claim of interfering with that relationship sufficient to overcome application of the competitor's privilege").

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request dismissal of the Complaint.


Dated:  March 18, 2019                    Respectfully Submitted,


By: */s/ Ian R. Walsworth*
    Ian R. Walsworth
    LEWIS BRISBOIS BISGAARD & SMITH LLP
    1700 Lincoln Street, Suite 4000
    Denver, Colorado 80203
    Phone:  (303) 861-7760
    Fax:      (303) 861-7767
    E-mail: Ian.Walsworth@LewisBrisbois.com

    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March 2019, the foregoing DEFENDANTS'

MOTION TO DISMISS PLAINTIFFS' COMPLAINT was filed electronically using the Court's

CM/ECF system which will send notification of the filing to the following:

| | |
|---|---|
| Joshua A. Weiss | Arryn K. Miner |
| Martha L. Fitzgerald | Tyler B. Pensyl |
| Brownstein Hyatt Farber Schreck, LLP | Vorys Sater Seymour & Pease, LLP |
| 410 17th Street, Suite 2200 | 52 East Gay Street |
| Denver, CO 80202-4432 | Columbus, OH 43215 |
| *Attorneys for Plaintiffs* | |

*/s/ Ian R. Walsworth*
Ian R. Walsworth