IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00206-RM-MEH

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

    Plaintiff,
v.

PHONE REHAB, LLC,
MOSHE ATON,
ALEX DEEB, and
JOHN DOES 1-10,

    Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendants' Motion to Dismiss [ECF 37]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R. 72.1(c), the motion has been referred to this Court for a report and recommendation.

For their Complaint, Plaintiffs allege Defendants' sale of Otterbox and LifeProof products through the website, www.Amazon.com, (1) violates the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125, regarding trademark infringement; (2) violates 15 U.S.C. § 1125(a)(1)(A) regarding unfair competition; (3) violates 15 U.S.C. § 1125(a)(1)(B) regarding false advertising; (4) violates 15 U.S.C. § 1125(c) regarding trademark dilution; (5) constitutes common law trademark infringement; (6) is a deceptive trade practice in violation of Colo. Rev. Stat. § 6-1-105; and (7) tortiously interferes with Plaintiffs' contract and business relations. *See* Am. Compl., ECF 34. On April 11, 2019, Defendants filed the present motion to dismiss for the Court's lack of personal

jurisdiction and for the Plaintiffs' failure to state a claim. The Court heard argument on September 19, 2019 and, for the reasons that follow, respectfully recommends that the Honorable Raymond P. Moore deny Defendants' motion.

## I. Statement of Facts

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiffs in their Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs manufacture and sell cases and accessories for electronic devices. Am. Compl. ¶ 21, ECF 34. Plaintiffs' brand names and logos are recognized by consumers, and their names are associated with high quality, reliable, and durable products. *Id.* ¶¶ 29-30. Plaintiffs sell their products exclusively through their own website and through a network of authorized distributors and resellers. *Id.* ¶ 22. For the purpose of protecting their respective brands, Plaintiffs have registered trademarks with the United States Patent and Trademark Office ("PTO"). *Id.* ¶¶ 23-24. Through their extensive quality control processes, Plaintiffs ensure the safety and satisfaction of customers and maintain the integrity of their positive business reputation. *Id.* ¶ 22. However, the explosion of internet retail sales has made it difficult for Plaintiffs to monitor the unauthorized sale of their products through online markets, such as www.Amazon.com. *Id.* ¶¶ 33-35. Accordingly, Plaintiffs audit their authorized online sellers to ensure they conform to Plaintiffs' strict quality control requirements. *Id.* ¶ 108. For example, to be considered an authorized seller, the genuine products sold are required to have a limited warranty. *Id.* ¶ 112. Plaintiffs assert that their quality controls and the existence of a warranty are material for consumer satisfaction. *Id.* ¶¶ 107 and 117.

Defendants sell Plaintiffs' products through their online marketplace on www.Amazon.com.  *Id. ¶ 125.*  Defendants are not authorized sellers, and the products they sell are not subject to Plaintiffs' quality control system and do not come with a warranty.  *Id. ¶ 128.*  However, through Amazon.com, Defendants advertise the products they are selling as "new."  *Id. ¶ 189.*  "New" products on Amazon.com are required to come with the "original manufacturer's warranty."  *Id. ¶¶ 50-69 and 132-152.*

Consumers of Plaintiffs' products have submitted numerous negative reviews on www.Amazon.com, and Plaintiffs attribute at least some of the negative reviews to Defendants' sales.[1]  *Id. ¶¶ 131-152.*  These negative reviews have caused damage to Plaintiffs' reputation and sales.  *Id.*  Plaintiffs sent multiple cease and desist letters informing Defendants that their conduct was harming the Plaintiffs in Colorado.  *Id. ¶¶ 192-198.*  Plaintiffs' attempts to resolve this matter prior to filing this suit were unsuccessful.  *Id.*

## II. Findings of Fact

The Court held an evidentiary hearing on Defendants' request for dismissal based on the Court's purported lack of personal jurisdiction.  *See Cudd Pressure Control, Inc. v. Cornelius*, 79 F.3d 1156 (10th Cir. 1996) ("We … review findings of fact made after an evidentiary hearing for clear error.") (citing *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 173 (10th Cir. 1992)).  The Court finds the following facts based on the hearing and evidence presented.

1. Defendants made 267 sales of 341 of the Plaintiffs' products in the State of Colorado between May 2018 and May 2019.  Pl. Ex. 1, ECF 57-1.

---

[1] The website, www.Amazon.com, allows customers to see only the reviews of a certain product, not specifically which seller sold the product. Therefore, it is impossible to determine which seller elicited the negative review, and the negative review is imputed to the product as a whole. ECF 34 ¶ 70.

2. Defendants made 1011 sales of 1226 products in the State of Colorado between May 2018 and May 2019. Pl. Ex. 2, ECF 57-2.

3. Defendants represented that the number of sales of their products in Colorado totaled less than 2% of their sales nationwide during the same period. *See* Pl. Ex. 3, ECF 57-3.

4. Defendants purchased Plaintiffs' products primarily from a wholesaler, Reagan Wireless. *See* Def. Exs. B-J, ECF 57-4 through 57-12.

## III. Legal Standards

### A. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2)

"Jurisdiction to resolve cases on the merits requires ... authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). "[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995). When "personal jurisdiction is assessed in an evidentiary hearing . . , the plaintiff generally must establish, by a preponderance of the evidence, that personal jurisdiction exists." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 n.4 (10th Cir. 2008) (citation omitted).

### B. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow

"the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

IV. **Analysis**

When a defendant seeks dismissal for both lack of jurisdiction and failure to state a claim, courts typically must decide first the jurisdiction question, since the Rule 12(b)(6) challenge would be moot if the court lacked personal jurisdiction. *See Manchus v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

    A.    <u>Personal Jurisdiction Over the Defendants</u>

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 134 (2014). The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see* Fed. R. Civ. P. 4(k)(1)(A). Colorado's long-arm statute, Colo. Rev. Stat. § 13–1–124, extends jurisdiction to the Constitution's full extent. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004); *Mr. Steak, Inc. v. District Court*, 194 Colo. 519, 574 P.2d 95, 96 (1978) (en banc). Thus, the personal jurisdiction analysis here is a single due process inquiry. *See Benton*, 375 F.3d at 1075.

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate

6

being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted). If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *Id.* (citations omitted). "This analysis is fact specific." *ClearOne Commc'ns., Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

1. *Minimum Contacts*

The "minimum contacts" test may be met pursuant to either of two ways – general jurisdiction or specific jurisdiction. Plaintiffs in this case have asserted the Court's specific personal jurisdiction over the Defendants. The Supreme Court has articulated the criteria for establishing specific jurisdiction as follows: "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the defendant *himself* creates with the forum State"... with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) and *Int'l Shoe Co. v. State of Wa.*, 326 U.S. 310, 319 (1945)). The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connections with the forum State" to support the basis for specific jurisdiction. *Id.* at 285 (citing *Burger King*, 471 U.S. at 478).

Accordingly, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents if the cause of action arises out of those activities. *Burger King Corp.*, 471 U.S. at 472-73. Thus, "[u]nder the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *Bartile Roofs, Inc.*, 618 F.3d at 1160; *see also Benton* 375 F.3d at 1076 ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") (internal quotation marks and citation omitted).

      a.     Did the Defendants Purposefully Direct Activities at Colorado's Residents?

To establish purposeful direction, a plaintiff must demonstrate more than mere foreseeability of causing injury in another state. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017) (citing *Burger King*, 471 U.S. at 474). The plaintiff's demonstration will succeed "where the defendant deliberately has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there." *Id.*

In cases involving sales transactions over the internet, courts have held that a defendant's use of a website to conduct business in the forum state, such as having a website that a customer in the forum state can access and on which the customer can purchase the alleged infringing product, provides a basis for a court's exercise of personal jurisdiction. *See Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F. Supp. 2d 824, 837-38 (N. D. Ill. 2000); *Stomp, Inc. v. NeatO,*

*LLC,* 61 F. Supp. 2d 1074, 1078-81 (C. D. Cal. 1999); *Park Inns Int'l, Inc. v. Pac. Plaza Hotels, Inc.,* 5 F. Supp. 2d 762, 763-65 (D. Ariz. 1998). In fact, in a recent opinion involving the same Plaintiffs and allegations, the Honorable David M. Ebel, sitting at the District level, found personal jurisdiction over the non-resident defendants where the Plaintiffs alleged fifty sales of alleged infringing products over the internet during a three-month period. *Otter Prods., LLC v. Big Birds, LLC*, No. 19-cv-00626-DME (D. Colo. Aug. 9, 2019) (copy attached).

In this case, the Plaintiffs have demonstrated sufficient purposeful activity directed at Colorado. This includes the sale and shipment of the alleged infringing products to Colorado through 267 separate transactions involving 341 products from May 2018 to May 2019. Moreover, during the same time period, the Defendants directed more than one thousand sales transactions involving other products to Colorado. These activities are sufficient to meet the first prong necessary to establish specific personal jurisdiction.

    b.  Did Plaintiffs' Injuries Arise out of Defendants' Forum-Related Activities?

The assertion of specific jurisdiction also requires that a plaintiff prove its injuries "ar[o]se out of' [the] defendant's forum-related activities." *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016) (quoting *Dudnikov*, 514 F.3d at 1071); *see also Bartile Roofs, Inc.*, 618 F.3d at 1160 (a plaintiff must show "the litigation results from the alleged injuries that arise out of or relate to those activities."). Courts have interpreted this language to require "some sort of" causal connection between a defendant's contacts and the plaintiff's claims. *Dudnikov* 514 F.3d at 1078. According to the Tenth Circuit, "[s]pecific jurisdiction is premised on something of a *quid pro quo:* in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Id.* In *Dudnikov*, rather than identify a specific causation test by which to determine the second prong,

9

the court determined that the plaintiff sufficiently met both the but-for and the proximate causation tests to support a determination that the plaintiffs' cause of action arose from the defendants' contact(s) with Colorado. *Id.* at 1079.

At least one court in this Circuit found that the receipt of a cease and desist letter was sufficient to put a defendant on notice that the brunt of the alleged injury would be felt by the plaintiff in the forum state, but absent a showing of continued sales of the alleged infringing product to the forum state after such notice, the court found an insufficient basis on which to assert specific personal jurisdiction. *See Tomelleri v. MEDL Mobile, Inc.*, 2:14-CV-02113-JAR, 2015 WL 1957801, at *6 (D. Kan. Apr. 29, 2015), *aff'd*, 657 F. App'x 793 (10th Cir. 2016). Here, by contrast, Plaintiffs allege that they sent multiple cease and desist letters in November and December 2018 informing Defendants that their conduct was harming the Plaintiffs in Colorado. The Defendants allegedly ignored Plaintiffs' letters and attempts to resolve this matter, and continued to sell the alleged infringing products to Colorado, as evidenced by Plaintiff's Hearing Exhibit 1. The Court finds that the conduct eliciting the cease and desist letters is the same conduct alleged to have caused Plaintiffs' injuries in this case; that is, but for Defendants' continued sales of the alleged infringing products to Colorado, the Plaintiffs would suffer no injury. Thus, Plaintiffs have met the second prong necessary to establish specific personal jurisdiction.

This Court recommends that Judge Moore find Plaintiffs have shown Defendants' minimum contacts with Colorado by demonstrating the Defendants purposefully directed their activities at Colorado's residents and Plaintiffs' cause of action arises out of those activities.

2. *Traditional Notions of Fair Play and Substantial Justice*

In addition to examining a defendant's minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and

substantial justice" in this case. *ClearOne Commc'ns., Inc.*, 643 F.3d at 764. This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Id.* In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

Defendants "bear[ ] the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Emp'rs Mut. Cas.*, 618 F.3d at 1161 (internal quotation marks and brackets omitted). Regarding the first factor, while it is not dispositive, "the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *Id.* at 1096. In both the motion and reply, Defendants argue only that it would be a "burden" on them to litigate in Colorado, and that Plaintiffs are more easily able to litigate elsewhere. Defendants claim this lawsuit was filed in Colorado with the sole purpose of placing the Defendants at a disadvantage, but they have provided no evidence to support this contention. In fact, Defendants were ably represented by qualified counsel at the September 19, 2019 hearing before this Court.

Moreover, there is no dispute (at this stage) that the alleged injuries occurred in Colorado where the Plaintiffs reside and seek relief. The remaining factors do not persuade the Court to either position. Thus, the Court's consideration of the reasonableness factors demonstrates the Defendants have failed to present a compelling argument that requiring them to defend this case in Colorado would render jurisdiction unreasonable.

This Court recommends that Judge Moore find the Plaintiffs have shown by a preponderance of the evidence that the Court should exercise specific personal jurisdiction over the Defendants in this case.

B.  Failure to State a Claim

Plaintiffs seek relief from Defendants based on seven claims: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 15 U.S.C. § 1125; (2) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (3) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (4) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (5) common law trademark infringement; (6) unfair and deceptive business practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq;* and (7) tortious interference with contract and business relations. Defendants move for the dismissal of the Amended Complaint for Plaintiffs' failure to state each and every claim. The Court will address each claim in sequence.

1.  *Claims 1 and 3*

For their first and third claims, Plaintiffs allege the Defendants are unlawfully reselling Plaintiffs' products in violation of the following provisions of the Lanham Act:

(1) Any person who shall, without the consent of the registrant

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

To succeed under both claims for trademark infringement and unfair competition, Plaintiffs must prove (1) they have a protectable interest in the trademark(s), (2) Defendants used the identical or similar trademark(s) in commerce, and (3) Defendants' use of the trademark(s) has caused a likelihood of confusion. *See Derma Pen LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014).

Defendants challenge only the third element, claiming there is no likelihood of confusion and they are protected by the "first sale" doctrine. "The essence of the 'first sale' doctrine is that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009) (the right of the producer to control distribution of its trademarked product does not extend beyond the first sale of the product). However, courts have recognized two exceptions to the "first sale doctrine": (1) "material difference" and (2) "quality control." In *Beltronics USA, Inc.*, the Tenth Circuit held, "as other federal circuit courts have held, that the unauthorized resale of a materially different trademarked product can constitute trademark infringement." *Id.* Although it appears the Tenth Circuit has not yet adopted the "quality control" exception, at least one court in this

District has: *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131, 136 (D.Colo.1980), which was cited with approval by Judge Ebel in *NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007). Defendants argue that Plaintiffs fail to plausibly allege the two exceptions.

        a.        Material Difference Exception

Plaintiffs allege Defendants are not authorized sellers and, therefore, Plaintiffs' products are sold by Defendants without the original manufacturer's warranty. Courts have recognized that material differences may include warranties associated with goods at issue. *Beltronics USA, Inc.*, 562 F.3d at 1072. In support of their allegations, Plaintiffs include reviews of customers claiming the products they purchased were defective, poor quality, and *falsely stated the products came with a warranty*. Taking the allegations as true for this analysis, the Court finds Plaintiffs have sufficiently alleged that the material difference exception applies to overcome the "first sale" doctrine.

        b.        Quality Control Exception

The parties dispute whether Plaintiffs plausibly allege the application of the quality control exception for Claims 1 and 3. Under the quality control exception, the resale of a trademarked product is not protected by the "first sale" doctrine if the manufacturer has established quality control practices and the alleged infringing products are not subject to those quality controls. *See Adolph Coors Co.*, 486 F. Supp. at 136 (the court found liability for unfair competition when "customers [we]re likely to be confused" by the defendant's unauthorized marketing and distribution of Coors beer, and Coors could be injured because customers "will hold Coors responsible for any loss of high quality resulting from defendant's acts."). To overcome Defendants' motion, the Plaintiffs must allege: (i) they have established legitimate, substantial, and nonpretextual quality control procedures, (ii) they abide by these procedures, and (iii) the non-

conforming sales will diminish the value of the trademark. *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996).

For purposes of this analysis, the Court adopts Judge Ebel's cogent summary of the Plaintiffs' allegations, which, in his case, are identical to those alleged here:

> [Plaintiffs] require[ ] authorized distributors who sell products online to identify themselves clearly to consumers so that, if consumers have concerns about the quality or a defect in a product, consumers will know who to contact for assistance; to inspect products they receive in order to remove from their inventory any defective or damaged good before it reaches a consumer; to store products in specified ways to prevent damage; to ship products themselves, and not to allow third parties to fulfill orders on behalf of the authorized online distributor; and not to repackage products. Defendants, on the other hand, do not follow these quality controls; they sell anonymously on Amazon; they do not maintain their own inventory of products but instead allow Amazon to store the products Defendants are reselling and allow Amazon to fulfill Defendants' orders for products. Specific consumers have complained that through anonymous online purchases, they have received Otter products that are defective, of poor quality, have been repackaged, and are in "used" condition despite being sold as "new."

*Otter Prods., LLC*, No. 19-cv-00626-DME, at 8-9. In addition, Plaintiffs allege that

> Defendants' unauthorized advertisement and sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are genuine Otter products, or are sponsored by, authorized by, or otherwise connected with Plaintiffs when, in fact, they are not. Defendants' unauthorized use of the Otter Trademarks has infringed upon and materially damaged the value of the Otter Trademarks and caused significant damage to Plaintiffs' business relationships.

Am. Compl. ¶¶ 281-282. These facts taken together as true are sufficient at this stage to establish the "quality control" exception to the first sale doctrine. The Court recommends that Judge Moore deny Defendants' motion to dismiss Claims 1 and 3 for failure to state a claim.

    2.    *Claim 2*

Based on the same arguments proffered for Claims 1 and 3, Defendants assert that Plaintiffs fail to state a plausible false advertising claim under the Lanham Act, which provides in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

. . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). To plausibly state a false advertising claim, Plaintiffs must allege (1) defendant made materially false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) that injure the plaintiff. *Digital Ally, Inc. v. Util. Assocs., Inc.*, 882 F.3d 974, 978 (10th Cir. 2018) (quotation omitted).

As already discussed, Plaintiffs allege that Defendants falsely advertised that the products they were reselling came with the manufacturer's original warranty when, in fact, they did not, which caused confusion, led to poor reviews, and harmed Plaintiffs' reputation and sales. The Court finds these allegations taken as true plausibly state a claim for false advertising under the Lanham Act. The Court respectfully recommends that Judge Moore deny Defendants' motion to dismiss Claim 2.

       3.    *Claim 4*

Defendants contend that Plaintiffs fail to state a claim for dilution because they rely on only conclusory statements. The relevant statute provides:

(c) Dilution by blurring; dilution by tarnishment

(1) Injunctive relief Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely

to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

(2) Definitions

(A) For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
(iii) The extent of actual recognition of the mark.
(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.
. . .
(C) For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

15 U.S.C. § 1125(c). To succeed on a claim for dilution, Plaintiffs must plausibly allege they (1) own a "famous" mark; (2) the mark was famous before the defendant began its use; and (3) the defendant's use has or will cause "dilution." *Otter Prod., LLC v. Wang*, No. 18-cv-03198-CMA, 2019 WL 1403022, at *5 (D. Colo. Mar. 28, 2019) (citing *King of the Mt. Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 577 (D. Colo. 1997), *aff'd*, 185 F.3d 1084 (10th Cir. 1999)). Defendants challenge Plaintiffs' allegations regarding the first element.

However, the Court finds Plaintiffs plausibly allege that their marks are "famous," as required under 15 U.S.C. § 1125(c)(2). *See* Am. Compl. ¶¶ 27 (alleging Otter registered Otterbox® in May 2010 and has actively used that mark since that time), 29-31 (alleging consumers "widely" recognize this mark, and associate it with "high quality, reliability, and durable products")); *see also Otter Prods., LLC*, No. 19-cv-00626-DME, at 12. Also, Plaintiffs

17

sufficiently allege that Defendants' conduct diluted Plaintiffs' trademark by linking it to products of "poor quality products that received negative reviews." *Id.* ¶ 48. The Court recommends that Judge Moore deny Defendants' motion to dismiss Claim 4.

### 4. *Claims 5 and 6*

For these claims, Plaintiffs allege Defendants engaged in common law trademark infringement in violation of Colorado common law and deceptive trade practices in violation of Colo. Rev. Stat. § 6-1-101, *et seq.* Defendants assert these claims fail "for the same as the Lanham Act claims." Mot. 18 ("Because none of Plaintiffs' federal law claims states a claim on which relief can be granted, it follows that none of Plaintiffs['] state-law claims states a claim on which relief can be granted either.").

Here, the Court has concluded Plaintiffs plausibly allege each of their Lanham Act claims under a Rule 12(b)(6) analysis. Absent other or additional argument, this Court recommends that Judge Moore deny Defendants' motion to dismiss Claims 5 and 6.

### 5. *Claim 7*

Finally, Defendants argue that Plaintiffs allege only conclusory statements to meet the required elements of a claim for tortious interference.

Under Colorado law, "[a] plaintiff cannot be entitled to relief on a claim of intentional interference with contract unless he alleges and proves that the defendant intentionally and improperly induced a party to breach the contract or improperly made it impossible for a party to perform." *Warne v. Hall*, 373 P.3d 588, 595 (Colo. 2016). The Colorado Supreme Court has indicated that, "[b]ecause it is so clearly dependent upon context and circumstances, we have never attempted to rigidly define 'improper' for all purposes of interference with contract." *Id.* at 596. But the Court considers such factors as the nature of the actor's conduct, the actor's motive, the

interests in the other with which the actor's conduct interferes, the interests being advanced by the actor, the social interests in protecting the freedom of action of the actor and the contractual interest of the other, the proximity or remoteness of the actor's conduct to the interference, and the relation between the parties. *Id.* (citing restatement (Second) of Torts § 767 (Am. Law Inst. 1975)). Considering those factors here, and in addition to those allegations already referenced, Plaintiffs have sufficiently alleged that Defendants acted improperly in interfering with Plaintiffs' contracts with its authorized distributors, including the terms of the contracts with their authorized distributors that Defendants induced those distributors to breach. Moreover, Plaintiffs plausibly allege they had agreements with their authorized distributors that precluded sales to any unauthorized reseller; Plaintiffs informed Defendants of these agreements; Defendants thereafter induced Plaintiffs' authorized sellers to sell Plaintiffs' products to Defendants for resale, contrary to those agreements, by not disclosing Defendants' intent to resell those products; and this has harmed Plaintiffs. Am. Compl. ¶¶ 207-213; *see also Otter Prods., LLC*, No. 19-cv-00626-DME, at 13. The Court finds these allegations, considered together and taken as true, are sufficient to meet the plausibility standard under Rule 12(b)(6).

Defendants also argue that they are entitled to invoke the "competitor's privilege," an affirmative defense to an intentional inference claim. But that defense is available only against claims for interference with prospective contracts or contracts terminable at will, which are not at issue in this case. *See Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1196-97 (Colo. App. 2009). Defendants have not shown the competitor's privilege defense applies here. This Court recommends that Judge Moore deny Defendants' motion to dismiss Claim 7.

**CONCLUSION**

Plaintiffs have proffered sufficient evidence to demonstrate this Court has specific personal jurisdiction over the Defendants, who purposefully directed product sales at Colorado, and the Plaintiffs' claims arise out of those sales. Further, the 70-page, 377-paragraph Amended Complaint plausibly alleges the Plaintiffs' seven claims for relief against Defendants. For these reasons, the Court respectfully recommends that the District Court **deny** Defendants' Motion to Dismiss Amended Complaint [filed April 11, 2019; ECF 37].[2]

Dated at Denver, Colorado this 27th day of September, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).